Despina SPIRIDES, Appellant,

v.

John E. REINHARDT, Director of
United States International
Communication Agency.

No. 78–1105.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 16, 1979.

Decided July 10, 1979.

Paul A. Kiefer, Washington, D. C., with whom Eileen M. Stein, Silver Spring, Md., was on brief, for appellant.

Charles L. Hall, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., and Judith A. Futch, Atty., United States International Communication Agency, Washington, D. C., were on brief, for appellee.

Before McGOWAN and LEVENTHAL, Circuit Judges, and OBERDORFER,* United States District Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by McGOW-AN, Circuit Judge.

McGOWAN, Circuit Judge:

This is an appeal from the District Court's order (1) granting appellee's motion

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

to dismiss the complaint for lack of jurisdiction over the subject matter, and (2) denying appellant's cross-motion for partial summary judgment. Both turn on the issue of whether appellant was an employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (the Act). 42 U.S.C. § 2000e–16 (Supp. II 1972). Because we find that the nature of appellant's employment status requires further evidentiary exploration, we vacate the grant of the motion to dismiss, leave undisturbed in the present state of the record the denial of the cross-motion for summary judgment, and remand the case for further proceedings consistent herewith.

## I

From September, 1968 to November 29, 1974, appellant Spirides worked intermittently in the District of Columbia as a foreign language broadcaster for the Greek Service, a division of the Voice of America (VOA).[1] Excepting the periods from (i) 1968 to 1969, (ii) October, 1970 through October, 1971, and (iii) October, 1974 through November 29, 1974,[2] she worked pursuant to Purchase Order Vendor (POV) contracts which indicated, *inter alia*, ". . . that the Contractor [Spirides] shall perform such services as an independent contractor, and not as an employee of the [United States International Communication] Agency."[3] Under these renewable yearly contracts, she was paid per assignment, which included four consecutive hours of rehearsals and performances as a mistress of ceremonies of the Greek Service's radio program.

In June, 1974, with the addition of two female foreign nationals to the employee staff of the Greek Service, the Chief of the

---

1. VOA is itself a division of the United States Information Agency (USIA), which has been renamed the United States International Communication Agency (USICA or Agency).

2. From September, 1969 to September, 1970, Spirides was on a leave of absence. During the other periods excepted in the text, Spirides was not under contract, and apparently worked pursuant to an informal oral agreement. *See* Affidavit of Appellant (Sept. 1977), J.A. at 19–20.

3. Appellee stated in the District Court that the Agency has authority to procure services of individuals like appellant under 22 U.S.C. § 1471(5) (1970), which allows the Secretary of State

   (5) to employ, without regard to the civil service and classification laws, when such employment is provided for by the appropriation Act, (i) persons on a temporary basis, and (ii) aliens within the United States, but such employment of aliens shall be limited to services related to the translation or narration of colloquial speech in foreign languages when suitably qualified United States citizens are not available. . . .

   *See also* Letter from C. Normand Poirier, Assistant General Counsel of USICA, to Gregory V. Morrow, Jr. (June 30, 1975), J.A. at 15–16 (Agency authorized to use purchase orders to obtain broadcast services under 22 U.S.C. § 1471(5) (1970)).

   In appellee's brief to this court and during oral argument, however, appellee suddenly claimed that 22 U.S.C. § 1471(5) only allows USICA to enter into personal service contracts with aliens, and thus is inapplicable here because appellant was an American citizen while she worked for appellee. Appellee now argues that USICA's hiring authority outside of the civil service laws stems from 41 U.S.C. § 252(c)(3) (1970), which provides that:

   (c) All purchases and contracts for property and services shall be made by advertising, as provided in section 253 of this title, except that such purchases and contracts may be negotiated by the agency head without advertising if—

   \* \* \* \* \*. \*

   (3) the aggregate amount involved does not exceed $10,000. . . .

   Appellant points out that her POV contract itself states that "the Agency is authorized to enter into this contract by the United States Information and Education Exchange Act of 1948 (Public Law 402, 80th Congress), as amended, and Reorganization Plan No. 8 of Aug. 1, 1953." This Act is codified only in various sections of Title 22, including section 1471. *See* 22 U.S.C. §§ 1431–1440, 1442, 1447, 1448, 1451–1453, 1456–1458, 1461, 1462, 1466–1468, 1471–1473, 1476–1479 (1970).

   We find it unnecessary to decide this question, because it is clear not only that USICA has authority to procure broadcast services without regard to the civil service laws, but also to contract with independent contractors. *Our task is to define the work relationship* between the Agency and such hirees, however, and neither of the statutes, nor the POV contract in question, whatever its source, provides such a definition.

Service informed Spirides he could no longer justify the expenditure of POV funds for a female voice. Therefore, her contract was not to be renewed after its September, 1974 expiration.

Claiming that this action resulted from sex discrimination, appellant filed a formal complaint with the Equal Employment Opportunity Office (EEOO) of USICA in October, 1974. The following month, without an investigation, EEOO issued a final decision finding no discrimination. Spirides then appealed to the Appeals Review Board of the Civil Service Commission (CSC), which found that USICA had violated civil service regulations by failing to investigate appellant's allegations, see 5 C.F.R. § 713.216 (1978), and remanded the case to USICA for further proceedings.

When EEOO again found no evidence of sex discrimination, appellant requested and received a hearing by an EEOO Complaints Examiner. His finding of sex discrimination and consequent recommendation of back pay and reinstatement were rejected by USICA in January, 1976, principally because Spirides was found to be a contractor instead of an employee. As such, she was determined to be ineligible for retroactive back pay and reinstatement under the Act.

A second appeal to the Appeals Review Board confirmed USICA's decision. The Board found that, because (1) Spirides was not a "federal employee" within the meaning of 5 U.S.C. § 2105(a) (1970),[4] (2) agency officials did not consider her an employee, and (3) her employment contract described her as an independent contractor instead of an employee, she was precluded from seeking redress under the Act or its regulations. See 5 C.F.R. § 713.212 (1978).

Her administrative remedies exhausted, Spirides timely filed a complaint in the District Court alleging unlawful termination of her employment by reason of her sex.[5] She claimed jurisdiction under the Act, and sought declaratory relief, retroactive and prospective injunctions, and damages.[6] USICA filed a motion to dismiss the complaint for lack of subject matter jurisdiction, on the ground that Spirides was not an employee under the Act and hence not protected by its provisions. Spirides opposed this motion, and moved for partial summary judgment on the issue of her status as an employee under the Act. Relying only on these motions and responses, together with affidavits in support of the summary judgment motion, the District Court found that Spirides was at all times under contract as a Purchase Order Vendor,[7] and thus was an independent contractor and not an employee. It therefore denied the partial summary judgment motion and granted the motion to dismiss the complaint. This appeal challenges both actions.

## II

### A. Scope of Coverage of Title VII

For several years after its enactment, Title VII of the Civil Rights Act of 1964 proscribed only nonfederal employment discrimination.[8] Congress became increasingly concerned, however, about the apparent inability of federal employees to obtain judi-

---

4. See text at —— of 198 U..S.App.D.C., at 830 of 613 F.2d, infra.

5. Appellant has now abandoned a companion contention that her dismissal was based at least partly on her American citizenship.

6. See 42 U.S.C. § 2000e–5(g) (1970) (if court finds respondent intentionally engaged in unlawful employment practice, it may issue injunction, and order any appropriate affirmative action including back pay, reinstatement, or other equitable relief).

7. The record before us does not support the District Court's finding that appellant was "at all times" under a POV contract, see note 2

supra and accompanying text, but we need not rely on this inconsistency as a basis for our decision.

8. See 42 U.S.C. § 2000e(b). This provision defines the term "employer" as

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States . . . .

cial review of employment discrimination cases.[9] Thus, in 1972, Title VII was amended by the Equal Employment Opportunity Act to forbid discrimination by federal government employers,[10] and to permit federal employees to sue those employers in discrimination cases.

Congress emphasized repeatedly that those covered by the 1972 amendments must be "employees," or individuals "employed by an employer." *Id.* § 2000e(f). For example, the Act states:

> All personnel actions affecting *employees* or *applicants for employment* . . . in executive agencies shall be made free from any discrimination based on . . . sex.

*Id.* § 2000e–16(a) (emphasis added). In addition, within a certain period of time after filing an initial charge with an agency, department, or unit, or after action by an agency or by the Civil Service Commission,

> . . . an *employee* or *applicant for employment* if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action . . .

*Id.* § 2000e–16(c) (emphasis added).[11]

This statutory language supports the conclusion that the 1972 amendments to Title VII cover only those individuals in a direct employment relationship with a government employer.[12] Individuals who are independent contractors or those not directly employed by such an employer are unprotected.[13] Status as an employee is therefore of crucial significance for those seeking

---

**9.** *See* S.Rep.No.92–415, 92d Cong., 1st Sess. 16 (1971) (aggrieved Federal employees do not have access to courts; proposed legislation enables such employees to file suit in appropriate U.S. district court after final agency action or final Civil Service Commission order on appeal); H.R.Rep.No.92–238, 92d Cong., 1st Sess. 25 (1971) (serious doubt that court review open to "aggrieved Federal employee"); *Hearings on S. 2515 et al. before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare*, 92d Cong., 1st Sess., 296, 301, 308, 318 (1971); *Hearings on H.R. 1746 before the General Subcommittee on Labor of the House Committee on Education and Labor*, 92d Cong., 1st Sess., 320, 322, 385–86, 391–92 (1971). *See also Brown v. GSA*, 425 U.S. 820, 826–28, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

**10.** Pub.L.No.92–261, § 717, 86 Stat. 211, 42 U.S.C. § 2000e–16 (Supp. II 1972). The new Act provides that

(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

**11.** *See* 5 C.F.R. § 713.212 (1977) (an agency "shall provide in its regulations for the acceptance of a complaint from an *aggrieved employee or applicant for employment*"). (Emphasis added).

**12.** In addition to Title VII coverage for government employees, an employee of a government contractor is protected against the contractor's discriminatory actions during performance of the contract. *See* Exec. Order No. 11,246, 3 C.F.R. 340 (1964–1965 Compilation), *reprinted in* 42 U.S.C. following § 2000e (1976) (all government contractors shall include in every government contract provisions forbidding certain types of discrimination against employees; contractors are to take "affirmative action" to ensure that applicants are employed, and employees are treated, in a nondiscriminatory manner). For a general overview of the Executive Order, *see* Lopatka, *A 1977 Primer on the Federal Regulation of Employment Discrimination*, U.Ill.L.F. 69, 121–25 (1977). Executive Order No. 11,246 originally did not prohibit sex discrimination, but prohibitions against that form of discrimination were added by Executive Order No. 11,375, 3 C.F.R. 684 (1966–1970 Compilation).

**13.** It was suggested during oral argument that, apart from Title VII, appellant may be entitled to protection from discrimination as an independent government contractor, if that is what she ultimately is found to be. A claim based on grounds other than Title VII would, of course, require amendment of the complaint, and we need not speculate at this time about the propriety of such an amendment.

to redress alleged discriminatory actions in federal employment.

That the Greek Service in the present case is an employer is clear, because it is an "executive agency"[14] engaged in the "governmental activity" of broadcasting radio programs overseas. *See* 42 U.S.C. § 2000e(h). Whether appellant is an employee, or "individual employed by an employer," however, is more difficult to determine, because the Act does not clearly compel consideration of any particular set of factors, nor does it describe precisely the elements of the employment relationship that must exist to trigger equal employment coverage in the public sector.

### B. *Determination of Employee Status Under Title VII*

Appellee argues, and the Civil Service Commission agrees,[15] that the test for employee status should be controlled by the statutory definition of the term in the Civil Service Commission's authorizing legislation.[16] This definition of "employee" is found in 5 U.S.C. § 2105(a) (1970), which states in pertinent part:

(a) For the purpose of *this title*, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) the adjutants general designated by the Secretary concerned under section 709(c) of title 32, United States Code;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position. (Emphasis added).

Appellee points out, correctly to be sure, that appellant has not been "appointed to the civil service." Therefore, appellee argues that appellant cannot be considered an employee for purposes of the instant case. We disagree.

Examining the plain language of the Civil Service statute, we find that the definition of "employee" applies only to "this title," *i. e.,* Title V, which creates the Civil Service Commission. As this court has duly noted in the case of *Lodge 1858 v. Webb,*[17] an individual must satisfy all subsections of 5 U.S.C. § 1205(a) "to be deemed an employee *within the meaning of the Civil Service laws.*"[18]

---

**14.** *See* 42 U.S.C. § 2000e–16(a) (all personnel actions in executive agencies shall be made free from discrimination).

**15.** *See* Letter from Herman D. Staiman, Civil Service Commission, Appeals Review Board, to Mrs. Spirides (Apr. 27, 1977), J.A. at 11, 13.

**16.** Appellee and CSC point out that Congress originally designated the Commission to administer Title VII. *See* 42 U.S.C. §§ 2000e–16(a) to (c) (CSC given full authority to take any action it deems appropriate to enforce antidiscrimination policy in federal employment).

**17.** 188 U.S.App.D.C. 233, 580 F.2d 496 (1978). In *Webb,* a reduction-in-force (RIF) was announced at the Marshall Space Flight Center, requiring that employees be laid off only if they

could not be placed in alternative available positions. Appellants, former employees displaced by the RIF, claimed that certain alternative positions were being filled illegally and should be set aside for them because NASA was treating its independent contractors like employees in violation of the civil service laws. The court, in determining whether or not the workers in question were employees who required appointment under the civil service laws, looked in part to the Civil Service statute, 5 U.S.C. § 1205(a), and found that the workers in fact were not employees. *Id.* 188 U.S.App. D.C. at 241–43, 580 F.2d at 504–06.

**18.** *Id.* 188 U.S.App.D.C. at 241, 580 F.2d at 504.

In this case, however, the issue to be decided is not whether Spirides is an employee under the civil service laws, but whether she may in any respect be deemed an employee under Title VII as amended. Therefore, resort to the civil service definition is unwarranted, and whether or not Spirides may be deemed an employee cannot be determined merely by noting the absence of her "appointment to the civil service." Furthermore, because the Act is remedial in character, it should be liberally construed,[19] and ambiguities should be resolved in favor of the complaining party.[20] Use of the restrictive civil service definition here would not effectuate the broad remedial purposes of the Act,[21] and would therefore be inappropriate.

Rather, determination of whether an individual is an employee or an independent contractor for purposes of the Act involves, as appellant suggests, analysis of the "economic realities" of the work relationship.[22] This test calls for application of general principles of the law of agency to undisputed or established facts.[23] Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative.[24] Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here,[25] as it is at common law [26] and in the context of several other federal statutes.[27] If an employer has the right to

19. See, e. g., Coles v. Penny, 174 U.S.App.D.C. 277, 283, 531 F.2d 609, 615 (1976); Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 928 (5th Cir. 1975); Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir. 1972) (per curiam), cert. denied, 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973).

20. See, e. g., Coles v. Penny, 174 U.S.App.D.C. 277, 531 F.2d 609, 615, 617 (D.C.Cir. 1976); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970); accord, Harris v. Walgreen's District Center, 456 F.2d 588, 591 (6th Cir. 1972).

21. See Shultz v. Louisiana Trailer Sales, Inc., 428 F.2d 61, 65 (5th Cir.) (statute must be read in manner that effectuates major purpose of legislature), cert. denied, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). See generally SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–51, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 84 L.Ed. 340 (1940).

22. Deaton Truck Line, Inc. v. NLRB, 337 F.2d 697, 699 (5th Cir. 1964); accord, Ace Doran Hauling & Rigging Co. v. NLRB, 462 F.2d 190, 193 (6th Cir. 1972); see NLRB v. Hearst Publications, Inc., 322 U.S. 111, 128, 64 S.Ct. 851, 88 L.Ed. 769 (1944) (whether or not individuals are employees under National Labor Relations Act); Mathis v. Standard Brands Chemical Indus., Inc., 10 Empl.Prac.Dec. 5245, 5246 (N.D. Ga.1975) (whether individual is employee or independent contractor for purposes of Title VII).

23. Local 777 v. NLRB, 195 U.S.App.D.C. 280 at 292, 603 F.2d 862 at 874 (D.C.Cir., 1978).

24. Id. at 17; Frito-Lay, Inc. v. NLRB, 385 F.2d 180, 187 (7th Cir. 1967); United Ins. Co. of America v. NLRB, 304 F.2d 86, 89–90 (7th Cir.

1962); Morish v. United States, 555 F.2d 794, 796 (Ct.Cl.1977) (per curiam).

25. See Local 777 v. NLRB, 195 U.S.App.D.C. 280 at 294, 603 F.2d 862 at 876 (D.C.Cir., 1978) (National Labor Relations Act); Lodge 1858 v. Webb, 188 U.S.App.D.C. 233, 241, 580 F.2d 496, 504 (1978) (Civil Service Commission laws).

26. Restatement (Second) of Agency § 2 (1957) states:

(2) A servant [more recently termed "employee"] is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.
(3) An independent contractor is a person who contracts to work with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. (Emphasis added).

In a subsequent section, the Restatement indicates:

In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
the extent of control which, by the agreement, the master may exercise over the details of the work; Id. § 220(2)(a). (Emphasis added).

27. See Kelley v. Southern Pacific Co., 419 U.S. 318, 329–31, 95 S.Ct. 472, 42 L.Ed.2d 498 (day-to-day directive control over details of work supports findings that individuals were employees for purposes of Federal Employers' Liability Act); Local 777 v. NLRB, 195 U.S.App.D.C.

control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.[28]

Additional matters of fact that an agency or reviewing court must consider include, among others, (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i. e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

### III

The District Court found in its challenged order that "plaintiff was at all times a 'Purchase Order Vendor,' hence an independent contractor and not an employee of the

United States Information Agency . . . ." For this reason alone, the Court apparently concluded that it had no subject matter jurisdiction and dismissed the action. Even if the District Court had made this finding of non-employee status after applying the proper principles of law, that would not be the end of the matter. Under Fed.R.Civ. Proc. 52(a), an appellate court must set aside a trial court's findings if it concludes that they are "clearly erroneous." See United States v. United States Gypsum Co., 333 U.S. 364, 394–95, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In this case, we need not reach the question of whether the District Court's finding was clearly erroneous, however, because the District Court applied an erroneous legal standard in holding that Spirides was outside the reach of Title VII. See United States v. Singer Mfg. Co., 374 U.S. 174, 194 n. 9, 83 S.Ct. 1773, 10 L.Ed.2d 823.

The District Court made its decision relying principally, if indeed not entirely, on the contract language. Courts generally look to the substance of a contract rather than its form,[29] and, although contract language may be indicative to some degree of the intention of the parties, it is not necessarily controlling.[30] Moreover, employment contracts, no matter what the circumstances that justify their execution or what the terms, may not be used to waive protections granted to an individual under this or any other act of Congress.[31]

280 at 293, 603 F.2d 862 at 875 (D.C.Cir., 1978) (National Labor Relations Act); Lodge 1858 v. Webb, 188 U.S.App.D.C. 233, 241, 580 F.2d 496, 504 (1978) (civil service laws); Morish v. United States, 555 F.2d 794, 799 (Ct.Cl.1977) (Internal Revenue Code).

28. See Lodge 1858 v. Webb, 188 U.S.App.D.C. 233, 241, 580 F.2d 496, 504 (1978) (control of details of workman's physical conduct usually decisive in finding employee status); Restatement (Second) of Agency § 222(2) (1957) (to determine whether one is employee or independent contractor, must consider the extent to which master exercises control over details of work).

29. National Van Lines, Inc. v. NLRB, 273 F.2d 402, 406 (7th Cir. 1960); see Jankovic v. United States, 384 F.Supp. 1355, 1360–61 (D.D.C.1974) (Civil Service Commission improperly relied on

contract form over substance in finding plaintiff not to be employee of United States).

30. See NLRB v. A. S. Abell Co., 327 F.2d 1, 6–7 (4th Cir. 1964) (fact that labor contracts on face do not create employment relationship is of some import but not controlling); National Van Lines, Inc. v. NLRB, 273 F.2d 402, 406 (7th Cir. 1960) (contract language stating that party is independent contractor indicative to some degree of intent of parties); Mathis v. Standard Brands Chemical Indus., Inc., 10 Empl.Prac. Dec. 5245, 5246 (N.D.Ga.1975) (contract referring to plaintiff as "independent contractor" not binding determination of plaintiff's employment status for purposes of Title VII litigation).

31. See J. I. Case Co. v. NLRB, 321 U.S. 332, 337, 64 S.Ct. 576, 88 L.Ed. 762 (1944) (National Labor Relations Act); accord, McClure v. Salvation Army, 460 F.2d 553, 557 (5th Cir. 1972) (Title VII).

In this case, the POV contract indicates beyond question not only that the Greek Service had authority to hire appellant, but that it had authority to hire her as an independent contractor. Yet, despite the "independent contractor" language, the contract does not define the employment relationship between the parties other than to indicate in the barest of terms the service to be provided, the payment schedule, and the length of the agreement. Because consideration of these facts alone was insufficient to support a finding that appellant was an independent contractor and thus beyond the scope of the Act, we hold that the District Court's virtually exclusive reliance on the contract language as indicative of appellant's employment status was error. The Court should have reviewed all of the circumstances surrounding Spirides' work relationship in addition to its consideration of the elements of her POV contract.

## IV

The District Court also denied appellant's cross-motion for partial summary judgment, apparently on the basis of the language in the POV contract. Appellant claims that the specific facts alleged in her motion, together with those in her accompanying affidavit, are sufficient to support the grant of summary judgment in her favor, particularly in view of appellee's failure to respond to the motion with affidavits or any countering evidence. We are unpersuaded that this is so.

While it is always perilous for an opposing party to remain silent in the face of a summary judgment motion, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the moving party still has the burden of showing that there exist no genuine issues of material fact. *Id.* at 159, 90 S.Ct. 1598; 6 Moore's Federal Practice ¶ 56.22[2], at 1338 (2d ed. 1976). If the movant makes an insufficient showing, no defense is required.[32]

Appellant showed in her papers that she worked as a foreign language radio announcer at the Greek Service for about five years, from 1968 to 1969 and from 1970 through 1974. She worked pursuant to a Purchase Order Vendor contract for most of this period,[33] and apparently pursuant to an oral agreement for the rest of the time. She normally worked approximately four hours per day from three to five days per week, and was paid per assignment. The Greek Service provided her an office and all the materials for her work. She continually worked for the same supervisor who instructed her when rehearsing or broadcasting as to voice inflection, reading tempo, and projection. The program scripts were written for her, and although her comments and criticism of the scripts were accepted, she could not change any part of a script without approval.[34]

Even though for present purposes we must accept these statements as true,[35] there remain issues of material fact that may bear on the determination of appellant's employment status, such as whether she was given annual leave, whether the Greek Service paid social security taxes for her, and whether she received retirement benefits. Appellant thus has not met her burden of proving entitlement to partial summary judgment.

As stated hereinabove, the appeal is availing as to the dismissal of the complaint

**32.** *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 115, 479 F.2d 201, 207 (1973) (even if opponent comes forth with nothing, summary judgment denied if facts supporting motion do not establish nonexistence of genuine issue of material fact).

**33.** *See* note 2 *supra*.

**34.** *See* Affidavit of Appellant (Sept. 1977), J.A. at 17–20.

**35.** *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972); *Morrison v. Walker*, 404 F.2d 1046, 1048–49 (9th Cir. 1969); *see Thompson v. Evening Star Newspaper Co.*, 129 U.S.App.D.C. 299, 302, 394 F.2d 774, 777 (absent statement from opposing party setting forth all material facts as to which genuine issue exists, court may assume truth of facts in motion for summary judgment), *cert. denied*, 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968).

but not as to the cross-motion for summary judgment; and the case is remanded.

*It is so ordered.*