Elmer E. OESTMAN, Jr.,
Plaintiff–Appellant,

v.

NATIONAL FARMERS UNION INSUR-
ANCE CO., a corporation, National
Farmers Union Property and Casualty
Co., a corporation, National Farmers
Union Standard Insurance Co., a corpo-
ration, National Farmers Union Life
Insurance Co., a corporation, Farmers
Union Mutual Insurance Co., a corpo-
ration, Farmers Union Mutual Insur-
ance Company of Denver, Colorado, a
corporation, and Farmers Union Ser-
vice Association, a corporation, Defen-
dants–Appellees.

No. 90–1300.

United States Court of Appeals,
Tenth Circuit.

March 3, 1992.

John R. Olsen, Olsen and Brown, Boul-
der, Colo., for plaintiff-appellant.

John M. Husband, Holland & Hart (Peter
M. Ludwig, with him, on the brief), Denver,
Colo., for defendants-appellees Nat. Farm-
ers Union Property and Cas. Co., Nat.
Farmers Union Standard Ins. Co. and Nat.
Farmers Union Life Ins. Co.

Karen A. Tomb, Hill & Robbins, P.C.
(Robert F. Hill and David R. Fine, with her,
on the brief), Denver, Colo., for defendants-
appellees Farmers Union Service Ass'n and
Farmers Union Mut. Ins. Co.

Before LOGAN and SETH, Circuit
Judges, and BRATTON, District Judge *.

SETH, Circuit Judge.

Appellant, Elmer Oestman, appeals from
the district court's grant of summary judg-
ment in favor of defendants on Mr. Oest-
man's claim under the Age Discrimination
in Employment Act, 29 U.S.C. § 621 *et seq.*
(ADEA). The district court concluded that
it did not have subject matter jurisdiction

* Honorable Howard C. Bratton, United States
District Judge for the District of New Mexico,
sitting by designation.

over Mr. Oestman's claim because he was an independent contractor and not an employee for the purposes of ADEA. On appeal, Appellant contends that the amount of control exercised over him by Appellees qualifies him as an employee under ADEA. For the reasons that follow we affirm the decision of the district court.

Appellant, an insurance agent, contracted with Appellees to sell insurance beginning in 1963. The engagement contracts, called "local agent agreements," signed by Appellant govern the relationship between Appellant and Appellees. The contracts provide in part:

"2. Responsibilities:

"(a) LOCAL AGENT, *acting solely as an independent contractor,* is hereby authorized to solicit and submit written applications for the insurance policies and other contracts of INSURER strictly in accordance with the instructions and direction of INSURER...."

(Emphasis added.)

Other limitations on the relationship between the parties also were spelled out in the contracts. For example, the contracts prohibit the agent from initiating any advertising of the insurance policies without the prior written consent of the insurer and the general agent; require the local agent to agree that neither he nor any member of his immediate family residing in his home will solicit or sell any other insurance without the insurer's and general agent's written consent; prevent the local agent from making any modifications or waivers of the prescribed requirements in the insurance applications and the terms and conditions of the policies; provide for compensation in the form of commissions and bonuses for the insurance policies sold and serviced by the local agent; and allow for termination by either party with thirty days' notice.

Additionally, Section 7(b) of the local agent agreements provided:

"(b) Nothing contained herein shall be construed as creating the relationship of employer and employee between the LOCAL AGENT and INSURER or GENERAL AGENT."

In the conduct of his business, Mr. Oestman was given wide latitude. Appellant was free to establish his business as a sole proprietorship, partnership or corporation. He was also free to set his own working hours and those of his staff. Mr. Oestman was responsible for maintaining his own offices separate and apart from those of Appellees. Appellant also had complete discretion over hiring and firing his staff. Expenses incurred in Appellant's sale of insurance were borne solely by Appellant and he provided his own transportation and office equipment with the exception of a pilot computer project.

Appellant was paid on a commission basis with no social security or income taxes paid or withheld by Appellees. In addition to filing his taxes as a self-employed individual, Appellant maintained a Keogh retirement plan. Although Appellant did not receive workers compensation coverage, Appellees did provide paid life, health and disability coverage.

Appellant filed suit under ADEA which prohibits discrimination on the basis of age. Appellees filed motions to dismiss and argued that the district court did not have jurisdiction under ADEA because Appellant was an independent contractor, not an employee as that term is defined in ADEA. The district court treated the motions to dismiss as motions for summary judgment and ruled that there were no material facts in dispute and that Appellant was not an employee of Appellees for purposes of ADEA. The court then dismissed the case for lack of subject matter jurisdiction. We review the district court's grant of summary judgment de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.).

Appellant contends the district court erred in holding that he was not an employee under ADEA. He argues that the amount of control exerted over him by Appellees was sufficient to grant him employee status. ADEA defines "employee" as, "an individual employed by any employer." 29 U.S.C. § 630(f). No further guidance is given within the bounds of the statute as to what constitutes an employee.

Courts attempting to distinguish between employees and independent contractors for the purposes of interpreting federal anti-discrimination legislation have developed two primary tests: the economic realities test and the hybrid test. *See Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir.); *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 36–37 (3d Cir.). Under the economic realities test the central question becomes: Is this worker, as a matter of economic fact, in business for himself? *See Doty v. Elias*, 733 F.2d 720, 723 (10th Cir.). This test is most often applied to cases arising under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq. Zippo*, 713 F.2d at 36.

The hybrid test, which is most often applied to actions under Title VII, is a combination of the economic realities test and the common law right to control test. *Id.* at 37. Although the hybrid test looks at the economic realities of the situation, the focus of the inquiry is the employer's right to control the "means and manner" of the worker's performance. *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.). Other factors considered by courts applying the hybrid test are:

> "(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties."

*Id.* at 832.

■ The question of whether an insurance agent is an employee or an independent contractor under ADEA is one of first impression in this circuit. In *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.), we examined the issue of whether partners in an accounting firm were employees for purposes of Title VII, ADEA, and FLSA. After an extensive review of the statutes and case law, we held that the unique nature of partnerships precluded the use of either the economic realities test or the control test. *Id.* at 276. However, because our holding in *Wheeler* was based on the unique characteristics of a partnership, it does not foreclose the application of these tests in other ADEA cases. The present case warrants such an application.

We hold that the correct standard for determining whether an insurance agent is an employee under ADEA is the hybrid test. In *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40, the Supreme Court explained that the ADEA is a hybrid of the FLSA and Title VII. The Third Circuit explained further in *Zippo*:

> "The Court found that Congress 'intended to incorporate fully the remedies and procedures of the FLSA.' Thus, ADEA's scope for purposes of procedure and remedies is determined by FLSA. However, the substantive 'prohibitions of the ADEA were derived *in haec verba* from Title VII.' Therefore, the scope of its substantive prohibition of discrimination in employment is determined by Title VII. The determination of employee status is a question relating to the substantive prohibitions of ADEA and not to its remedies and procedures. Consequently, the hybrid standard that combines the common law 'right to control' with the 'economic realities' as applied in Title VII cases is the correct standard for determining employee status under ADEA."

713 F.2d at 38 (citations omitted).

■ In applying the hybrid test no single factor is conclusive. Rather, the court must look at the totality of circumstances surrounding the working relationship between the parties. *See Spirides*, 613 F.2d at 831. The facts in the present case, taken as a whole, lead us to the conclusion

that Mr. Oestman was an independent contractor and not an employee under ADEA.

The focus of the hybrid test is the employer's right to control the "means and manner" of the worker's performance. *Id.* In this case, Appellant's performance was subject to virtually no restrictions. Appellant's daily activities were not supervised and he was free to work as he chose. Appellant was not required to report to his office or to spend certain hours in pursuit of sales.

Other aspects of the relationship between the parties also lead to the conclusion that Appellant was an independent contractor instead of an employee. Appellant furnished his own office space and equipment. He was free to take a vacation whenever he deemed appropriate. In addition to being paid by commission, Appellees did not withhold taxes from Mr. Oestman's pay and did not pay social security taxes for him.

Beyond the manner in which Appellant conducted his daily business, the parties' intentions as expressed in the local agent agreements indicate that Appellant was an independent contractor. The language of Section 7(b) of the contract is clear:

"(b) Nothing contained herein shall be construed as creating the relationship of employer and employee between the LOCAL AGENT and INSURER or GENERAL AGENT."

The language of Section 2(a) of the contract is equally clear: "LOCAL AGENT, acting solely as an independent contractor...."

With regard to the provision in the contracts requiring Appellant to obtain Appellees' written permission before advertising any of Appellees' products, we agree with the district court that this is not the type of control that establishes an employer/employee relationship. Appellees have a substantial interest in controlling the advertising of their products because Appellees may be liable for Appellant's misstatements or misrepresentations.

More evidence of the parties' intent can be found in Appellant's own conduct. For several years Appellant filed his taxes as a self-employed individual. Additionally, Appellant established and maintained a Keogh plan which is only available to self-employed individuals. *See Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 982 (4th Cir.).

We note that there are some elements of the working relationship between the parties that when looked at alone seem to indicate an employer/employee relationship. However, on balance, the relationship is more accurately characterized as employer/independent contractor.

For the reasons stated above, the judgment of the United States District Court for the District of Colorado is AFFIRMED.