**Bernard LOPEZ, Plaintiff–Appellant,**

v.

**Hansford T. JOHNSON,\* Acting
Secretary of the Navy,
Defendant–Appellee.**

No. 02–35334.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 2003.

Filed June 23, 2003.

* Hansford T. Johnson is substituted for his predecessor, Richard Danzig, as Acting Secretary of the Navy. Fed. R.App. P. 43(c)(2).

J. Bryon Holcolm, Bainbridge Island, WA, for the plaintiff-appellant.

Marion J. Mittett, Assistant United States Attorney, Seattle, WA, for the defendant-appellee.

Before LAY,** GOODWIN, and GOULD, Circuit Judges.

PER CURIAM:

Bernard Lopez appeals the district court's summary judgment in favor of the Secretary of Navy on his disability discrimination action for compensatory damages under section 501 of the Rehabilitation Act of 1973 (RHA), 29 U.S.C. § 791. Lopez, whose employer provided computer services as a contractor for the Navy at Puget Sound Naval Shipyard (PSNS), challenges the court's conclusion that there was no evidence that he was a federal employee within the meaning of section 501 when PSNS denied him a handicap parking permit. We affirm.

## I.

Lopez worked for about three months as an employee of Applied Technology Associates (ATA), an independent contractor for the Navy. ATA paid Lopez' wages and withholding taxes, and was responsible for providing his benefits. From December 1,

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1997 to approximately January 13, 1998, he received training at PSNS from ATA personnel during the day shift. Lopez has a prosthesis for his right leg that makes walking great distances difficult. Navy transportation was available to him to access his work site inside PSNS during the hours of the day shift.

After his training period ended, Lopez was assigned the graveyard shift, along with other ATA employees, inside PSNS until ATA's contract with PSNS terminated at the end of February 1998. There was no Navy or public transportation available during the night shift. On Lopez' behalf, ATA asked PSNS for a disabled parking space inside the shipyard. PSNS denied this request, asserting that Lopez was an employee of ATA. PSNS stated that it was "ATA's obligation to provide whatever reasonable accommodation he requires." Lopez parked his car outside the shipyard gate and walked with difficulty to his work site.

Lopez first complained to an equal employment opportunity (EEO) counselor on February 4, 1998. In March 1998, Lopez filed a formal EEO complaint with PSNS. The Navy dismissed the complaint in August 1998 on the ground that Lopez had not been a federal employee. Lopez appealed to the Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC), which remanded the case to PSNS in August 1999 for additional findings relating to Lopez' employment status. PSNS again dismissed Lopez' claim in February 2000. On March 8, 2000, Lopez again appealed to the OFO of the EEOC, which issued a final order on February 28, 2001 affirming PSNS' decision to dismiss Lopez' claim because he was not a federal employee.

On January 8, 2001, while the final EEOC decision was pending, Lopez filed this action seeking $300,000 in compensatory damages under section 501 for extreme pain and anxiety caused by having to walk several blocks from the perimeter of PSNS to his work station. The United States filed a motion for summary judgment, which the district court granted. The district court concluded that Lopez did not raise a genuine issue of material fact on whether he was a federal employee under section 501. This appeal followed.

## II.

Section 501 of the RHA announces a federal government policy to prevent discrimination against the disabled in employment decisions, and expressly encourages federal government employers to employ individuals with disabilities. *See Buckingham v. United States*, 998 F.2d 735, 739 (9th Cir.1993) ("The duty on [federal] employers thus goes beyond mere non discrimination; the regulations promulgated under section 501 emphasize the affirmative obligation to accommodate...."). Section 501 borrows its substantive standards from the Americans with Disabilities Act (ADA). *See* 29 U.S.C. § 791(g). For complaints filed under section 501, the RHA borrows "the remedies, procedures, and rights" from Title VII of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794a(a)(1). Title VII waives sovereign immunity by permitting actions for compensatory damages brought by federal employees and applicants for federal employment. *See* 42 U.S.C. § 2000e–16(c).

Lopez can state a claim against the Secretary of the Navy under section 501 only if, as an employee of a private contractor working within Navy-controlled premises, he was a federal employee. The RHA does not define who is a federal employee for purposes of section 501, and we have found no Ninth Circuit case defining who can be a federal employee in this context.

The district court, relying on Title VII's intention to provide the same civil rights to federal employees as to private sector employees, applied the hybrid common law test of an employment relationship used in Title VII cases. *See, e.g., Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883–84 (9th Cir.1980) (applying multi-factor common law hybrid test for Title VII purposes to determine whether a professional musician performing concerts for a school district under contract was an employee of the school district or an independent contractor).

■ Lopez urges us to hold that he is a "civilian employee" under PSNS' internal parking regulations. Those regulations generally provide that disabled parking spaces shall be made available to "civilian employees" of the Navy working at PSNS. Lopez asks us to read "civilian employee" to include that any civilian doing any work for a contractor on shipyard premises. This argument fails for several reasons.

First, the district court correctly noted the difference between civilian and military employees of the Department of the Navy. *See, e.g.,* 29 C.F.R. §§ 1614.103(b)(1) (providing that section 501 applies to Departments of the Army, the Navy, and the Air Force), (d)(1) (providing that section 501 does not apply to uniformed military personnel); *Bledsoe v. Webb,* 839 F.2d 1357, 1359 (9th Cir.1988) (addressing a Title VII claim brought by a civilian employee of the Navy as justiciable, as opposed to such claims brought by uniformed military personnel); *Gonzalez v. Dep't of Army,* 718 F.2d 926, 928 (9th Cir.1983) (distinguishing between civilian employees of the Army and enlisted personnel). In addition, the parking regulations state that "[c]ontractors and vendors POVs will not be assigned parking within the Shipyard." "Civilian employees" as used in the parking regulations thus cannot be read to

include Lopez, a civilian employee of a contractor. Moreover, even if the parking regulations Lopez relies on could be read to include employees of contractors under the provisions pertaining to handicapped parking, he offers no authority to support a conclusion that PSNS' internal parking regulations could define who is a federal employee under section 501.

In the absence of a Ninth Circuit case, *Redd v. Summers,* 232 F.3d 933 (D.C.Cir. 2000), provides some guidance. The D.C. Circuit in that case addressed a lawsuit for a discriminatory termination under section 501 brought by an obese woman employed by a private contractor (Aspen) to provide tours at the Treasury Department's Bureau of Engraving and Printing (Treasury). *Redd,* 232 F.3d at 936. The court first explained:

> As [the plaintiff] was undoubtedly an employee of Aspen, she seeks to bring herself within § 501 on the theory that Treasury and Aspen are her joint employers. She argues—and Treasury accepts—that we should apply the test stated in *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979), a case considering whether the plaintiff was an employee or an independent contractor.
>
> Despite the parties' agreement, we doubt whether the *Spirides* test is suited to this case.

*Id.* at 937.

■ *Spirides* had applied the common law hybrid employment test (which combines the economic realities test and the common law agency test) to determine if an individual is an independent contractor or a federal employee for purposes of Title VII. *See* 613 F.2d at 831–33. Under that test, "[t]he distinction between employment and an independent contractual affiliation depends upon the economic realities of the situation. The extent of the employer's right to control the means and

manner of the worker's performance is a primary factor." *Lutcher,* 633 F.2d at 883 (internal citations omitted). "Other factors include: whether the 'employer' or the individual in question furnishes the equipment used and the place of work; the length of time during which the individual has worked; the method of payment; and whether the work is an integral part of the business of the 'employer.'" *Mitchell v. Frank R. Howard Mem'l Hosp.,* 853 F.2d 762, 766 (9th Cir.1988).

██ The D.C. Circuit in *Redd* said that it had never invoked *Spirides* to resolve an issue of joint employment, and noted the Third Circuit's "fairly standard formulation" of a joint employment test: "whether 'one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Redd,* 232 F.3d at 938 (alteration in original) (quoting *NLRB v. Browning–Ferris Indus. of Pennsylvania, Inc.,* 691 F.2d 1117, 1123 (3d Cir.1982)). *Redd* avoided, however, deciding which test to apply because the parties did not argue this issue. *See id.*

The court in *Redd* thus applied the common law hybrid test, placing the greatest emphasis on whether Treasury had "the right to control and direct the work of [the plaintiff], not only as to the result to be achieved, but also as to the details by which that result is achieved," and concluded that the plaintiff was not a federal employee. *Id.* at 938–39. The court first noted these facts in support of an employment relationship between the plaintiff and Treasury: the plaintiff worked on Treasury premises; the plaintiff used Treasury office supplies, two-way radios, and uniforms; and a Treasury supervisor involved herself for a brief period in the "means and manner" of the plaintiff's tour presen-

tation. *See id.* at 938–40. Outweighing these facts, however, were the following facts: Treasury was not involved in the plaintiff's training; Aspen provided the majority of the plaintiff's supervision with respect to the "means and manner" of her work performance; and tours are part of Treasury's public relations, not an integral part of its business of printing currency and stamps; the decision to terminate the plaintiff was solely within Aspen's power, even though Treasury had the right to reject any guide; and Aspen paid the plaintiff's wages, provided for her vacation time, and paid the social security taxes due (the court noted, however, that the factors relating to wages and benefits were especially ill-suited to a joint employment theory because .the plaintiff indisputably was Aspen's employee). *Id.*

██ We agree with the D.C. Circuit that the multi-factor common law hybrid test is ill-suited for determining whether an individual, who is indisputably an employee of an independent contracting entity that provides employees to perform services for the government, is also an employee of the government. *See Redd,* 232 F.3d at 938–40. We need not, however, decide between these tests because it is clear in this case that Lopez was not a federal employee under either test.

Although the Navy retained control over parking within PSNS and provided the office space and equipment Lopez used, it did not retain any control over the terms and conditions of his work. ATA was solely responsible for hiring and training Lopez. ATA maintained its own supervisors on site within PSNS who set his work schedule, and solely assigned and supervised his work. Lopez was required to report to ATA supervisors, not to PSNS personnel, if he were sick or late. PSNS thus did not retain for itself sufficient control of Lopez under the joint employer test

to be deemed his employer together with ATA.

The same conclusion follows from application of the common law hybrid employment test, given that the primary factor under that test is the putative employer's right to control the means and manner of the worker's performance. *See Lutcher*, 633 F.2d at 883. Other than providing the situs of the work Lopez performed, PSNS had no control over his job performance.

At oral argument, Lopez asserted that a strict legal interpretation of the word "employee" when applied to contractors who provide workers to perform services for federal agencies on government-controlled premises could have a chilling effect on the employment decisions of those contractors. This argument should have more resonance in a legislative hearing than in a judicial proceeding.

**AFFIRMED.**