Stuart NICHOLS, Plaintiff,

v.

AGENCY FOR INTERNATIONAL
DEVELOPMENT, Defendant.

No. Civ.A. 98–00906 (CKK).

United States District Court,
District of Columbia.

May 8, 1998.

Jay D. Schiffres, Washington, DC, for Plaintiff.

Claire Whitaker, Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Until he had been terminated on April 11, 1998, Plaintiff Stuart Nichols served as Chief, Information Management Systems (GS–14) within the Agency for International Development (AID), the Defendant in the above-captioned action. On the day immediately preceding his termination, Mr. Nichols, through counsel, applied for a temporary restraining order (TRO) to enjoin AID from removing him. That afternoon, Judge Thomas Penfield Jackson denied the TRO. Pending currently before the Court are Plaintiff's Motion for a Preliminary Injunction, Defendant's Opposition, Plaintiff's Reply, and Plaintiff's Addendum to his Reply. After considering carefully the pleadings and exhibits, the Court determines that oral argument on this matter is unnecessary. First, the Court lacks subject-matter jurisdiction over Mr. Nichols' action as he has pled it; second, even assuming jurisdiction exists, Mr. Nichols has failed to establish that he will suffer irreparable injury in the absence of injunctive relief.

## I. BACKGROUND

For approximately eighteen years, Mr. Nichols worked for AID. *See* Compl. ¶ 4. Since 1991, the fifty-two-year-old plaintiff had served as a GS–14 Chief, Information Management Systems in the Office of the Inspector General. *See id.* ¶ 1. Despite his lengthy tenure with AID, in 1996, twice in 1997, and most recently in February of this year, Mr. Nichols filed Equal Employment Opportunity (EEO) complaints alleging a myriad of discriminatory practices and retaliatory behavior orchestrated by his supervisors at AID. *See id.* ¶¶ 6, 15, 9, 15.[1] Due to what he characterizes as "constant harassment, discrimination and retaliation," Mr. Nichols avers that on July 24, 1997, he suffered "a near nervous breakdown (severe anxiety, depression and exacerbation of Spasmodic Torticollis and essential tremor, causing him to leave work[)]." *Id.* ¶ 10. Since then, Mr. Nichols has not returned to work. On January 23, 1998 Plaintiff received a memorandum that directed him to return to work or to provide within thirty days certification from a doctor stating the symptoms, medical bases, and reasons that Mr. Nichols could not return to work or perform his duties. *See id.* ¶ 14; *id.* (attached unnumbered exhibit). Although Plaintiff's doctor submitted a timely response, AID believed that the certification failed to address crucial information that the January 23, 1998 memorandum specifically requested. *See* Def.'s Opp'n at 2. AID forwarded a notice of proposed removal to Mr. Nichols on March 9, 1998. *See* Compl. ¶ 17. Despite the attempt that Plaintiff's doctor made to supplement his previous certification, AID found that there was no reason to stay the proposed termination. *See id.* ¶¶ 20–21. By letter dated April 3, 1998, Plaintiff received AID's final agency decision, which indicated that he would be terminated effective April 11, 1998. Mr. Nichols sought a TRO the day before his

---

1. Plaintiff omitted several pages from his Complaint when he initially filed his papers with the Clerk's Office. Mr. Nichols attempted to remedy his oversight by submitting those missing pages in a later filing. Inexplicably, however, Mr. Nichols misnumbered the paragraphs in his supplemental pages. This careless mistake accounts for the apparent discrepancy of citing paragraph 15 twice.

effective termination; Judge Jackson denied it. What remains is Plaintiff's application for a preliminary injunction to vacate AID's decision to terminate him.

## II. THIS COURT LACKS SUBJECT– MATTER JURISDICTION

■ Federal courts are courts of limited subject-matter jurisdiction whose powers emanate directly from the contours of Article III. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–80, 2 L.Ed. 60 (1803). From this bedrock principle stems a corollary rule: that a federal court, whether trial or appellate, has a duty to notice a failure of subject-matter jurisdiction on its own motion at any time during the proceedings. *See Potomac Passengers Ass'n v. Chesapeake & O. Ry.*, 520 F.2d 91 (D.C.Cir.1975). This "rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception." *Mansfield, C & L M R Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

■ The doctrine of sovereign immunity insulates the United States from suit except on such exact terms as Congress authorizes. *See Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). Without identifying precisely any provision or section, Mr. Nichols simply asserts that he brings this action pursuant to Title VII's prohibition on reprisal. *See* Compl. at ¶ 2. Because he is suing an agency of the federal government, it is clear that Mr. Nichols must proceed under 42 U.S.C. § 2000e–16, which extends the protection of Title VII to federal employees. Congress, however, has conditioned the United States' waiver of sovereign immunity. To initiate an action under § 2000e–16, the "head of the department, agency, or unit, as appropriate, shall be the defendant." § 2000e–16(c). This language means what it says. As this Circuit has noted, "[t]he only proper defendant in a Title VII suit ... is the 'head of the department, agency, or unit'

in which the allegedly discriminatory acts transpired." *Hackley v. Roudebush*, 520 F.2d 108, 115 n. 17 (D.C.Cir.1975). In the case at bar, Plaintiff has not sued an agency head but instead has sued the Agency for International Development. Because Congress has not waived AID's sovereign immunity under Title VII, the Court must *sua sponte* dismiss for lack of subject-matter jurisdiction "even though the parties are prepared to concede it." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

■ The Court recognizes that the Administrative Procedure Act (APA), 5 U.S.C. § 702, operates as a general waiver of the United States sovereign immunity from suits seeking exclusively injunctive relief. Nonetheless, even had Mr. Nichols invoked the APA, the Court would still lack a basis for subject-matter jurisdiction. Despite its general reach, the APA "excludes from its waiver of sovereign immunity ... claims seeking relief expressly or impliedly forbidden by another statute." *Transohio Savings Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C.Cir.1992); *see also* 5 U.S.C. § 704. Among those statutes that have been deemed to provide exclusive remedies is Title VII. As the Supreme Court has held, " § 717 of the Civil Rights Act of 1964, as amended [42 U.S.C. § 2000e–16], provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Clarifying this holding, the Court of Appeals for the District of Columbia Circuit has observed that "[t]hus an aggrieved federal employee is precluded from bringing suit under other federal anti-discrimination statutes that apply more generally," *McKenna v. Weinberger*, 729 F.2d 783, 791 (D.C.Cir. 1984).[2] Therefore, because § 2000e–16 provides the only basis for Mr. Nichols' claim for injunctive relief, he must comply strictly with that section's filing requirements. His failure to sue the proper defendant as required under § 2000e–16(c) mandates dismissal.

---

2. If, however, Mr. Nichols' basis for injunctive relief were predicated instead on AID's failure to adhere to its own regulations—whether its mo-

tive was legal or not—the APA would afford Mr. Nichols the opportunity to sue directly AID. *See McKenna*, 729 F.2d at 791.

**4**

The Court recognizes that Plaintiff could cure this technical jurisdictional defect by simply re-filing this action with the proper named defendant. Accordingly, in Part III, *infra*, of this Memorandum Opinion, the Court proceeds to identify significant deficiencies in Mr. Nichols' claim for injunctive relief.

## III. EVEN IF THE COURT POSSESSED JURISDICTION, MR. NICHOLS HAS FAILED TO DEMONSTRATE IRREPARABLE INJURY

■ Although Title VII typically conditions suit in federal court on exhaustion of administrative remedies, *see* 42 U.S.C. § 2000e–16(c), it is settled law in this Circuit that federal employees enjoy the right to seek interim injunctive relief to maintain the status quo. *See Wagner v. Taylor,* 836 F.2d 566, 574–75 (D.C.Cir.1987); *Bonds v. Heyman,* 950 F.Supp. 1202, 1207 (D.D.C.1997). Under the traditional calculus, for Mr. Nichols to obtain the temporary injunctive relief that he seeks, he must establish (1) a substantial likelihood of success on the merits, (2) that he would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *See CityFed Fin. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 923 (D.C.Cir.1958). In *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), however, the Supreme Court held that probationary federal employees must demonstrate an even greater showing of irreparable injury when seeking to enjoin the government: "[R]espondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override" the many factors that militate against enjoining the government. *See id.* at 84, 94 S.Ct. 937. While the District of Columbia Circuit Court has yet to address whether *Sampson*'s higher standard extends to claims founded upon Title VII, *see Wagner,* 836 F.2d at 575 n. 66 ("[W]e need not address the question whether a higher standard is required in such instances."), a district court within this Circuit has concluded

that *Sampson* does transcend Title VII cases. *See Bonds,* 950 F.Supp. at 1212 ("This court finds that a more stringent showing of irreparable injury is required when a plaintiff, even in a Title VII case, seeks a preliminary injunction against the federal government in the personnel arena."). Despite the uncertain status that *Sampson* boasts in Title VII litigation, the Court need not resolve the issue today because, apart from the jurisdictional problems that plague this action, Mr. Nichols has failed to satisfy the traditional standard for irreparable injury.

■ Mr. Nichols never articulates how exactly his termination will irreparably injure him. Rather, he enumerates a number of factors for the Court to consider: he is fifty-two years old, he will forgo his $75,000 annual salary, his health benefits have already been terminated, and his attempts at future employment will suffer because he has occupied a position in a highly specialized field. *See* Pl.'s Reply (Aff. of Stuart Nichols at 1–2). Merely reciting these considerations, albeit important ones, is insufficient to justify an order from this Court that would compel the federal government to reinstate Mr. Nichols. As the Supreme Court observed in *Sampson,* "[e]ven under the traditional standards of *Virginia Petroleum Jobbers, supra,* it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson,* 415 U.S. at 90, 94 S.Ct. 937. Indeed, this Circuit has held:

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Virginia Petroleum Jobbers,* 259 F.2d at 925 (emphasis in original). In the commercial context, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the mov-

ant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985). In the case at bar, Mr. Nichols, has never suggested, nor supported with evidence, that he will incur harm of this degree without injunctive relief. Moreover, if he ultimately prevails, Mr. Nichols will be able to recover fully his backpay and full complement of compensatory relief (up to $300,000 pursuant to 42 U.S.C. § 1981a). Merely asserting that one will lose his or her job and its attendant salary, without more, cannot possibly provide a sufficient basis for injunctive relief.

■ None of the other factors that Mr. Nichols identifies establishes irreparable injury. That he is fifty-two years old and trained in a highly specialized field says nothing about the irreparable nature of his injury. Notably, apart from offering the official title of his GS–14 position, Mr. Nichols says nothing about what specifically he does or how someone with his talents will incur difficulty locating employment. To exercise its equitable discretion appropriately, the Court must rely on more than just the Plaintiff's conclusory beliefs. That is, "[t]he harm alleged cannot be speculative, and it must be 'both certain and great.'" *Competitive Enterprises Institute v. United States Dep't of Agriculture*, 954 F.Supp. 265, 276 (D.D.C. 1996) (quoting *Wisconsin Gas Co.*, 758 F.2d at 674).

Finally, with one sentence and absolutely no supporting evidence, Mr. Nichols claims that "fellow employees who would have testified on my behalf will likely not come forward for fear of their jobs." Pl.'s Reply (Aff. of Nichols at 2). Even in *Bonds v. Heyman*, 950 F.Supp. 1202 (D.D.C.1997), a case on which Plaintiff stakes great reliance, the court found that it was not "likely that a 'chilling effect' would result from [the plaintiff's] termination, as no real evidence has been offered to support such an argument." *Id.* at 1215. Mr. Nichols' single-statement allegation, buttressed by no factual support, cannot support a finding of irreparable injury based on a putative chilling effect. Accordingly, the Court concludes that Mr. Nichols has failed to demonstrate that he will suffer irreparable injury in the absence of interim injunctive relief.

As the Supreme Court has held, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Because Mr. Nichols has failed to establish irreparable injury, the Court need not labor too long on the remaining three factors to consider. To assess the merits, the Court turns to the familiar three-part evidentiary framework that the Supreme Court fashioned in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In an action for retaliation, a plaintiff must establish a prima facie case by demonstrating (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *See McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir.1984). Once the prima facie case is made, the defendant assumes the burden of articulating a legitimate, nondiscriminatory rationale for the adverse employment action. *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). If a defendant clears this intermediate hurdle, the plaintiff inherits the burden of proving by a preponderance of the evidence that the proffered reason is pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Mr. Nichols has stated a prima facie case and AID has responded in kind by articulating a legitimate, nondiscriminatory rationale for terminating the Plaintiff; namely, that he failed to appear for work when ordered and failed to provide sufficient documentation for his alleged injuries. At this nascent stage in the litigation, however, the Court is unable to determine whether Mr. Nichols will likely prevail in proving that AID's decision was pretextual. Unlike the court in *Bonds v. Heyman*, 950 F.Supp. 1202 (D.D.C.1997), which granted interim injunctive relief based on a well-developed record after discovery had concluded, this Court lacks such a record. The burden of demonstrating likelihood of success on the merits rests with the applicant for injunctive relief.

Because the present record prevents the Court from reaching an intelligent conclusion on this issue, this factor tilts in favor of AID.

■ Finally, the Court notes that the balance of harms to AID and the public interest weighs significantly against Mr. Nichols. If the bare allegations of irreparable injury that Mr. Nichols has marshaled could justify interim injunctive relief, the federal government would be paralyzed from taking necessary personnel action every time an employee believed that his or her termination or involuntary separation was animated by discriminatory or retaliatory animus. This is not to say that in every case concerns for federal-government efficiency and autonomy will prevail always over a properly pleaded and supported application for temporary injunctive relief. Mr. Nichols' suit is simply not that case.

## IV. CONCLUSION

This Court lacks subject-matter jurisdiction because Congress has not waived AID's immunity from suit under Title VII. Moreover, even had Mr. Nichols captioned this action appropriately, he failed to demonstrate how the absence of injunctive relief will precipitate irreparable injury—the touchstone of this Court's equitable powers. Accordingly, the Court denies Mr. Nichols' application for a preliminary injunction, and dismisses the case. An Order accompanies this Memorandum Opinion.

## ORDER

For the reasons expressed in the accompanying Memorandum Opinion, it is, this 7 day of May 1998, hereby

**ORDERED** that the above-captioned case is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.