Rennetta MASON, Plaintiff,

v.

The AFRICAN DEVELOPMENT FOUNDATION & Nathaniel Fields, President, Defendants.

No. CIV.A.03–1997(RBW).

United States District Court, District of Columbia.

Dec. 7, 2004.

Rennetta Mason, Forestville, MD, pro se.

Amako Nelson Kingsley Ahaghotu, Washington, DC, for Plaintiff.

Wyneva Johnson, Washington, DC, for Defendants.

### MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court on the Defendant's Motion to Dismiss ("Def.'s Mot.") [D.E. # 11], which is based on the argument that this Court lacks subject-matter jurisdiction over the dispute in this case. The plaintiff has brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, alleging various unlawful employment practices, including harassment, the creation of a hostile work environment, discrimination, retaliation, and wrongful discharge. Plaintiff's Complaint ("Compl.") ¶ 11. The plaintiff seeks to recover monetary damages, fees and costs associated with this litigation, and equitable relief. *Id.* ¶ 36. For the following reasons, this Court will grant the defendants' dismissal motion.

### I. Factual Background

The plaintiff, Rennetta Mason, was employed by the defendants, The African Development Foundation ("ADF") and its President, Nathaniel Fields.[1] *Id.* ¶ 5. The plaintiff was initially hired in October 1998, to perform receptionist functions under a contract the ADF entered into with a temporary services agency, Career Blazers. Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 1. "Ten months later, [the] ADF contracted directly with [the p]laintiff for administrative assistance and receptionist work." *Id.* She "worked directly under the Office of Budget Finance and Administration for approximately four and one half years, beginning October 5, 1998, until her employ-

1. The African Development Foundation is a federal agency established by the United States Congress in 1980. Defendant's Memo- randum of Points and Authorities in Support of Defendant's Motion to Dismiss at 1.

ment was terminated on April 30, 2003." Compl. ¶ 5. The plaintiff alleges that "[d]uring the approximately one-year period preceding her discharge, [she] was harassed, made to work in a hostile work environment, retaliated against, and discriminated against by the [d]efendants, all because of her race, color, sex and/or national origin." *Id.* The plaintiff also claims that her "supervisor subjected her to a barrage of insults, many of which referred to and were directed at the [p]laintiff's race, color, sex and/or national origin." *Id.* The plaintiff claims that she "was intentionally given non-meaningful, non-productive, and redundant work to complete" during the one-year period preceding her discharge. *Id.* Moreover, the plaintiff alleges that she "was intentionally denied assignments relative to her position and/or job description by her then immediate supervisor, Vicky Gentry;" who also "frequently berated and humiliated . . . her in the presence of other employees without justification." *Id.* The "[p]laintiff originally signed a one year contract with the [ADF] to be renewed annually." *Id.* After renewing her contract for the fourth time in 2002, the plaintiff alleges that her supervisor "changed her employment contract to be renewed every six months, and eventually changed her employment contract to be renewable every two weeks without [p]laintiff's knowledge or consent . . . ." *Id.*

On approximately February 20, 2002, the plaintiff contends that she "made a verbal complaint to her Senior Supervisor, Tom Coogan" ("Coogan") about her working conditions and he immediately corrected the situation by assigning her "meaningful work and assignments that were suitable and within her job description." *Id.* ¶ 6. However, in January 2003, Coogan was out of the office for several weeks and

Vicky Gentry ("Gentry") was re-assigned as the plaintiff's supervisor. *Id.* The plaintiff claims that she was then again given "tedious work assignments" and "made to work again in a hostile work environment." *Id.* For example, the plaintiff represents that at that same time she "was taking academic courses to complete a job training program that was provided by the [United States Department of Agriculture] ("USDA") Graduate School and funded through her employer." *Id.* And she claims that having completed about one-half of her courses, in January 200[3][2], Gentry refused to approve and renew the plaintiff's application to complete the classes without providing any written or verbal justification for the decision. *Id.*

From January 2003 to April 2003, the plaintiff represents that she verbally complained to the President of ADF, Nathaniel Fields, concerning the alleged hostile work environment, harassment, and discrimination she was being subjected to. *Id.* ¶ 7. The plaintiff alleges that Fields reassigned her to work in his department and "verbally warned her not to file a formal complaint." *Id.* Nonetheless, the plaintiff filed formal complaints with the District of Columbia Office of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on March 31, 2003. *Id.* ¶ 8. "On April 21, 2003, [the p]laintiff received the charge of discrimination from the EEOC to confirm the allegations, sign[,] and formally submit said complaint." *Id.* Subsequently, "[o]n April 30, 2003, after receiving notice of [the] [p]laintiff's formal complaint, . . . [d]efendant Nathaniel Fields discharged [the][p]laintiff and failed to provide [her] with any written or verbal reason for her termination, except his remark that 'there was no place for her in his agency.'" *Id.* The plaintiff

---

**2.** The Complaint actually indicates that the refusal to permit the plaintiff to take the

courses occurred in 2002. However, the Court assumes that the stated date is an error.

claims that she did not engage in any conduct that violated any policies that justified here termination and she believes that her termination was a "pretext intended to hide the true, unlawful reason for her discharge." *Id.* Moreover, the plaintiff claims that during her four and a half years at the ADF, she had "an unblemished employment record[,] she was never disciplined[,] and [she] regularly received above average or excellent evaluations." *Id.* ¶ 9.

## II. Standard of Review

On a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction." *Fowler v. District of Columbia,* 122 F.Supp.2d 37, 39–40 (D.D.C.2000) (citation omitted); *Zhengxing v. Nathanson,* 215 F.Supp.2d 114, 116 (D.D.C.2002). When determining whether subject-matter jurisdiction exists, "the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, the Court need not accept inferences that are unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Id.; Rann v. Chao,* 154 F.Supp.2d 61, 64 (D.D.C.2001), *aff'd,* 346 F.3d 192, 197 (D.C.Cir.2003). Additionally, the Court may consider materials in addition to the complaint and pleadings as it deems necessary in assessing its jurisdiction. *Id.*

## III. Legal Analysis

### A. The Proper Defendant in a Title VII Action

As an initial matter, the defendants claim that the only proper defendant in this action is Nathaniel Fields, the president of the ADF. Def.'s Mot. at 1. The defendants rely on 42 U.S.C. § 2000e–16(c), which provides that "an employee . . . , if aggrieved by the final disposition of his complaint [in the agency's administrative process], or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 . . . , *in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.*" *Id.* (emphasis added). The plaintiff argues that the defendant's reading of the statute is too narrow and that "the passage [emphasized above in the statute] could not reasonably be read to exclude [the] ADF from being a proper defendant in this action." Plaintiff's Memorandum of Points and Authorities in Support Opposition to Motion to Dissmiss [sic] Complaint ("Pl.'s Op.") at 3.

■ The Court agrees with the defendant's position. A member of this Court has reiterated that "the only proper defendant in a Title VII suit . . . is the 'head of the department, agency, or unit' in which the allegedly discriminatory acts transpired." *Nichols v. Agency For Int'l Dev.,* 18 F.Supp.2d 1, 3 (D.D.C.1998) (citing *Hackley v. Roudebush,* 520 F.2d 108, 115 n. 17 (D.C.Cir.1975)). Therefore, in *Nichols,* the Court reasoned that because the plaintiff had sued only the agency instead of the agency head, and because "Congress has not waived [the agency's] sovereign immunity under Title VII, the Court [was required to] dismiss [the case] for lack of subject-matter jurisdiction, . . . ." *Nichols,* 18 F.Supp.2d at 3; *see also Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (stating that "the head of the agency is the only proper defendant in a Title VII action"). In this case, the plaintiff names both the agency and the agency head as defendants in the action. As it is only proper, and necessary, to name the head of an agency acting in his or her official capacity as the defendant in a Title VII action, the agency will be dismissed as a defendant.

## B. Title VII's "Employee" Requirement

Title VII, which states that "[a]ll personnel actions affecting employees or applicants for employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–16(a), extends protection to federal government employees, but not to independent contractors or those not directly employed by the federal government. *Spirides v. Reinhardt,* 613 F.2d 826, 829 (D.C.Cir.1979). Whether the plaintiff qualifies as an employee as compared to an independent contractor is the issue presented to the Court in the defendant's motion to dismiss. To answer this question, the Court must conduct an "analysis of the 'economic realities' of the work relationship," in order to determine whether an individual is an employee or an independent contractor. *Zhengxing,* 215 F.Supp.2d at 117 (quoting *Spirides,* 613 F.2d at 831). Most important to this analysis, the Court must consider "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Id.; see also Redd v. Summers,* 232 F.3d 933, 938 (D.C.Cir.2000). Additionally, the Court must weigh the following eleven factual considerations:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" as the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e. by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Spirides,* 613 F.2d at 832. Subsequently, the Court in *Redd* grouped these eleven factors into four separate categories. *Redd,* 232 F.3d at 939. The first category involves only the last of the eleven *Spirides* factors—the intent of the parties. *Id.* The second category considers whether contracting out work is justifiable as a prudent business decision. *Id.* This second category groups together the first, second, and eighth *Spirides* considerations, which evaluate the elements of supervision, special skills, and whether the work performed is an integral part of the client's business. *Id.* The third category addresses the question of the client's control over the work. *Id.* This category includes the third and sixth *Spirides* factors—whether the client furnishes the equipment used and the place of work, and the manner in which the work relationship was terminated. *Id.* The last category groups those factors which asks whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees. *Id.* at 940. This category incorporates the fourth, fifth, seventh, ninth, and tenth *Spirides* factors, namely, the duration of the engagement, the method of payment, whether annual leave is afforded, whether the worker accumulates retirements benefits, and whether the client pays social security taxes. *Id.* Similar to what the Court did in *Spirides,* 613 F.2d at 832, the Court in *Redd* first considered "the putative employer's 'right to control the means and manner of the worker's performance'" before launching into its analysis of these four categories, even though the Court acknowledged that the eleven factors that comprise the four categories and the un-

derlying question of control should be "evaluated simultaneously." *Redd,* 232 F.3d at 938. This Court will therefore employ the same approach. *Id.* at 938.

## C. The Nature of the Plaintiff's Employment Relationship with the ADF

The defendant argues that the plaintiff is not entitled to Title VII protection because she is not an "employee" under the statute. Def.'s Mot. at 1. The plaintiff takes the opposite position. Plaintiff's Op. 1. The Court agrees with the defendant for the following reasons.

### 1. Employer's Right to Control the "Means and Manner" of the Worker's Performance

■ The first and most important consideration of the *Spirides* test focuses on the "employer's right to control the means and manner of the worker's performance . . . ." *Spirides,* 613 F.2d at 831 (citation omitted); *Redd,* 232 F.3d at 938. If the alleged employer has "the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Redd,* 232 F.3d at 938 (quoting *Spirides,* 613 F.2d at 831–32). In *Redd,* the court held that the defendant did not control the "means and manner" of the plaintiff's performance because the defendant merely assessed the quality of the completed work and was not involved in the plaintiff's training or actual performance that produced the finished product. *Redd,* 232 F.3d at 938.

Here, in support of her argument that the defendant controlled the means and manner of her performance, the plaintiff claims that "[t]hroughout her employment with ADF [she] worked under one supervisor or the other, all senior employees of ADF. She was subject to job evaluations, and did receive performance evaluations."

Pl.'s Op. at 2 & Exhibit ("Ex.") A (Affidavit of Rennetta Mason, dated April 7, 2004)("Mason Aff.") ¶¶ 3, 13. The plaintiff claims further that she was "never allowed to make any decision regarding [her] job description without the full consent" of one of her supervisors and that her "job description consisted of various duties under the direct guidance and approval of [her] supervisors." *Id.,* Mason Aff. ¶¶ 4, 5. The plaintiff offers as examples of her position the fact that on a daily basis she was "instructed to order office supplies and furniture when needed . . ., sign for the receipt of monies . . ., contact various personnel . . ., and disburse pre-approved Grants or Per Diems to constituents." *Id.* ¶ 5.

The defendant counters that only one evaluation of the plaintiff's job performance was conducted by the defendant and was done for the sole purpose of helping the plaintiff facilitate her search for other employment. Defendant's Reply To Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Rep.") at 3–4 & n. 2; Def.'s Mem., Ex. 1, (Declaration of Nathaniel Fields, dated March 18, 2004) ("1st Fields Decl.") ¶ 26. Moreover, the defendant points out that the plaintiff has produced evidence of only one job evaluation, while her assertions that she received yearly performance evaluations are unsupported by any evidence. Def.'s Reply at 3 & n. 2. The defendant furthers contends that he (Nathaniel Fields) and other members of the "ADF staff communicated policies and procedures that were essential to [the][p]laintiff[']s performance," but aside from that, the defendant had "no means, other than termination, of directly controlling the manner and means by which the plaintiff performed her work." Def.'s Mem. at 14 & Ex. 1 (1st Fields Decl.) ¶ 26. The defendant also states that the plaintiff would occasionally come into work on evenings or weekends without prior approval.

Def.'s Mem. & Ex. 1 (1st Fields Decl.) ¶ 25.

▪ It appears from the facts that the defendant assigned tasks to the plaintiff to perform, but it is not evident that they controlled the details of how she performed those tasks. The plaintiff was "most often given one and two month contracts, and for March and April 2003 worked under two week purchase orders with specific tasks and products to deliver." Def.'s Mem. at 13 & Ex. 1 (1st Fields Decl.) ¶ 17. Additionally, "[u]nlike civil servants, the employment relationship at issue here could be terminated by either party at will." *Id.* ¶ 28. Moreover, the "[d]efendant had no means, other than termination, of directly controlling the manner and means by which [the][p]laintiff performed her work." Def.'s Mem. at 14 & *see, e.g.,* Ex. 1 (1st Fields Decl.) ¶¶ 24–28. Therefore, the Court is not convinced that the defendant controlled the means and manner of the plaintiff's performance in a way that was more significant than would be expected in an independent contractor situation.

### 2. The Spirides Factors

The evaluation of these eleven factors also leads the Court to the conclusion that the plaintiff was not an employee of the ADF.

### a. The Intent of the Parties

▪ The Court in *Redd* grouped *Spirides'* eleven factual factors into four categories, with the first category being the intent of the parties, which is primarily reflected in the contact between the "contractor" and its "client." *Redd,* 232 F.3d at 939. In *Zhengxing,* the court agreed with the defendant's argument that the plaintiff understood the contractual nature of her job position with the defendant, especially since she had resigned from "a position with benefits for an position without benefits ...." *Zhengxing,* 215 F.Supp.2d at 119 Additionally, the Court considered an advertisement by the defendant indicating the organization's desire to hire contract employees as indicative of the defendant's intent to hire plaintiff as an independent contractor. *Id.* In assessing the intent of the parties to a contract, "[c]ourts generally look to the substance of a contract rather than its form, and, although contract language may be indicative to some degree of the intention of the parties, it is not necessarily controlling." *Spirides,* 613 F.2d at 832. In *Spirides,* although the contract indicated that the defendant had authority to hire the plaintiff as an independent contractor, the contract did not define the employment relationship between the parties other than to indicate in the "barest of terms" the service to be provided, the payment schedule, and the length of the agreement. *Id.* at 833. Thus, the Court ruled that "[b]ecause consideration of these facts alone was insufficient to support a finding that appellant was an independent contractor ... [,] the District Court's virtually exclusive reliance on the contract language as indicative of appellant's employment status was error." *Id.*

▪ In this case, the defendant claims that both parties intended the plaintiff's position to be a contractual position. Def.'s Mem. at 8; Compl. ¶ 5. The plaintiff, however, argues that it was not "explicitly stated in her contracts that she was not or shall not be an employee of the United States," and that the consistent reference to the plaintiff in the employment contract as a " 'contractor' as opposed to an 'employee' " does not establish that she was an independent contractor. Pl.'s Op. at 1–3. In response to the plaintiff's assertions, the defendant contends that "[t]he identification of [the] plaintiff as a contractor in the agreements is evidence of a clear rec-

ognition and acceptance by both parties of their contractual relationship." Def.'s Rep. at 6. In further support of their position that the plaintiff was an independent contractor, the defendants state that the plaintiff attempted to have her position converted into a permanent position, but was told that the ADF could not afford to hire her in such a capacity and that she should look for permanent employment elsewhere. Def.'s Mem. at 9 & Ex. 1 (1st Fields Decl.) ¶¶ 20–21. The Court agrees that the plaintiff's attempt to acquire permanent employment with the ADF supports the defendant's contention that she was aware of her contractual status with the organization. Unlike the contract in *Spirides*, which defined the contract terms in the "barest of terms," 613 F.2d at 833, the contract here provided a detailed explanation of the services the "contractor" was expected to provide, the period of employment, the cost of the contract, and the method and timing of payment. *See* Def.'s Mot., Ex. 8 (Negotiated Contract, dated October 17, 2000.)[3] Additionally, the Court notes that in the performance evaluation prepared by the plaintiff's supervisor, and incidentally used by the plaintiff to support her position that she was a government employee, the plaintiff is specifically referred to as "a contractor," Pl's Opp., Ex. 1 (Performance Assessment for the period January 1, 2002–December 31, 2002) at 3, further indicating the intent of the defendant to employ the plaintiff as an independent contractor, rather than as an employee. *See* Pl.'s Op., Ex. 2 (Performance Assessment) at 3. The defendant's further point out that "[the plaintiff] was advised that her skill level was not adequate to warrant her being selected for a position in [the] ADF should there be a vacancy." Def.'s Mem. at 9 & Ex. 1 (1st Fields Decl.) ¶ 22. The plaintiff was also advised by the President of her need to "seek employment elsewhere ideally in a permanent position where she could enjoy benefits such as having her continuing education paid for by an employer." Def.'s Mem. at 9 & Ex. 1 (1st Fields Decl.) ¶¶ 20, 22. The plaintiff does not address the President's advice to her in her opposition. Furthermore, the defendant posits, as additional support of its intent to hire the plaintiff as a contractor, that the plaintiff was granted advanced leave when her mother passed away, despite the fact that "as a contract employee, [the p]laintiff was not entitled to have leave advanced." *Id.* at 10. Moreover, the defendant contends that "[f]urther evidence [that the plaintiff was a contractor] is provided by [the] [p]laintiff's decision to approach the EEOC directly rather than proceeding through ADF's administrative EEO process." *Id.* at 11. Again, the plaintiff did not address these points in her opposition. On the facts presented to the Court, it finds that the intent of the parties in this case weighs in favor of an independent contractor, as opposed to an employer-employee relationship.

**b. Whether Contracting Out the Work Performed by the Plaintiff was Justifiable as a Prudent Business Decision**

The next category of the *Spirides* factors considered collectively by the *Redd* Court evaluates whether contracting out the work performed by the plaintiff was justifiable as a prudent business decision. *Redd,* 232 F.3d at 939. The first factor of the *Spirides* test falls within this category, namely, whether supervision of the contractor by the client is required. *Id.;*

---

**3.** As already noted, the *Spirides* Court emphasized that reference to the language of the contract alone is insufficient to establish the existence of an independent contractor relationship. 613 F.2d at 826. Accordingly, the contract language is but one item of evidence this Court considered in assessing the intent of the parties.

*Zhengxing,* 215 F.Supp.2d at 118. Accordingly, in *Zhengxing,* the Court determined that the lack of evidence of direct employer supervision weighed in favor of an independent contractor relationship. *Id.* at 118. Also encompassed in this category is the second factor of the *Spirides* test—whether the contractor's work requires special skills. *Redd,* 232 F.3d at 939; *Zhengxing,* 215 F.Supp.2d at 118. Considering this second factor, the Court in *Zhengxing* concluded that the plaintiff's specialized knowledge before commencing her position weighed in favor of a independent contractor relationship. 215 F.Supp.2d at 118. Finally, this category looks at whether the work performed by the contractor is an integral part of the client's business, the eighth *Spirides* factor. *Redd,* 232 F.3d at 939. In *Redd,* the Court concluded that visitor tours at the defendant's Bureau of Engraving and Printing facility were "part of [the agency's] public relations, not an integral part of its business," and accordingly, the plaintiff's position as a tour guide for the agency was not an integral part of the agency's business. *Id.* The *Redd* Court suggested that "[a]n affirmative answer to these questions may call into question the business bona fides of the decision to hire an independent contractor, possibly suggesting a purpose to circumvent rights afforded to employees." *Id.*

■ In this case, the plaintiff states that she worked under the supervision of ADF employees. Pl.'s Op. at 2. Specifically, the plaintiff claims that she "worked under the direct supervision of Tom Wilson and Tom Coogan," and that she "was never allowed to make any decision regarding [her] job description without the full consent of" her supervisors. *Id.* & Ex. A (Mason Aff.) ¶¶ 3, 4. To the contrary, the defendant contends that the plaintiff generally performed her tasks independent of supervision. Def.'s Rep. at 3 & Ex. 1 (1st Fields Decl.) ¶ 24. For example, the defendant states that "at times, [the plaintiff] decided, without consultation or approval, to carry out certain functions on weekends or evenings such as preparing for painting." Def.'s Mem., Ex. 1 (1st Fields Decl.) ¶ 25. Moreover, the defendant claims that the tasks performed as described by the plaintiff are of the sort that require only direct communication, not direct supervision. Def.'s Rep. at 3. The defendant represents that "the position does not generally require supervision in that it primarily involves answering phones, greeting visitors, maintaining mail logs, and providing occasional data entry." Def.'s Mem., Ex. 1 (1st Fields Decl.) ¶ 23. The plaintiff's job responsibilities are similar to the plaintiff's responsibilities in *Zhengxing,* where the court held that the lack of evidence of direct employer supervision weighed in favor of an independent contractor relationship. 215 F.Supp.2d at 118. Therefore, the Court concludes that the supervision factor suggests an independent contractor relationship.

As for the second *Spirides* factor, whether the contractor's work requires special skills, 613 F.2d at 832, the defendant states that the plaintiff performed mostly ministerial duties and did not have or need special skills to perform these tasks. Def.'s Mem. at 12 & Ex. 1 (1st Fields Decl.) ¶ 23. On this point, the plaintiff states that her job duties consisted of working as a receptionist, working as administrative assistant,[4] and performing

---

4. The plaintiff states that she would fill in for the President's administrative assistant when the assistant was not available or was absent from work. Pl.'s Op., Ex. A (Mason Aff.) ¶ 6. The plaintiff's tasks when she performed as the administrative assistant included, assisting the President "in all office duties, including screening telephone calls, typing memorandums and general administrative office duties." *Id.*

other various tasks, including ordering supplies and contacting personnel. Pl.'s Opp., Ex. A (Mason Aff.) ¶¶ 1, 5, 6. Here, the facts show that the work performed by the plaintiff did not require any special skills. This case is therefore different from *Zhengxing,* where the court emphasized that a requirement that workers have specialized knowledge before beginning work with the organization weighed in favor of an independent contractor relationship. 215 F.Supp.2d at 118. Accordingly, since no special skills were required of the plaintiff, this factor weighs against the existence of an independent contractor relationship.

With respect to the eighth *Spirides* factor, "whether the work [performed by the contractor] is an integral part of the business of the 'employer,'" *Spirides,* 613 F.2d at 832, the defendant claims that the ADF contracted out receptionist duties because it would not affect the full-time equivalent direct hire employee ("FTE") head count and the position was not integral to the business of the agency.[5] Def.'s Mem. at 12, Ex. 1 (1st Fields Decl.) ¶ 23. In fact, the defendant represents that the organization "could use its electronic telephone answering system, but preferred, when money allowed, that the office reception role be more personalized." *Id.* The ADF is a federal agency whose purpose is to complement current United States social and economic development programs in Africa. *See* 22 U.S.C. § 290h (2004). While the plaintiff's duties as a receptionist and occasionally as the administrative assistant allowed ADF employees to focus on the agency's mission, she was not integrally involved in furthering that mission. Def.'s Mem. at 12 & Ex. 1 (Fields Decl.)

¶ 23. Similarly, in *Redd,* the Court concluded that visitor tours at one of its buildings were part of the agency's public relations, not an integral part of its business, and accordingly the plaintiff's position as a tour guide for the agency was not an integral part of the agency's business. 232 F.3d at 939. As was the case in *Redd,* the plaintiff's receptionist role was not an integral part of the ADF's business, and accordingly, the Court finds that this factor weighs against the plaintiff being the organization's employee.

### c. The Defendant's Control Over the Plaintiff's Work

■ "If hiring independent contractors cannot be dismissed as an implausible business decision, it is sensible to turn to a third group of factors ...." *Id.* In this third grouping of the *Spirides* factors, which considers the defendant's control over the work performed by the worker, the *Redd* Court was evaluating whether the client furnished the equipment used along with the place where the work was performed, and the manner in which the work relationship was terminated. *Id.; see Zhengxing,* 215 F.Supp.2d at 119 (stating that the plaintiff's "termination without notice and/or explanation further underscore[d] her status as an independent contractor"). This evaluation invokes an inquiry of "whether the business is exercising a degree of control that seems excessive in comparison to a reasonable client-contractor relationship in the same circumstances." *Redd,* 232 F.3d at 939. In *Redd,* the Court found that providing the plaintiff with office space, office supplies, and uniforms did "little to prove

---

**5.** The defendant notes that the "ADF's personnel ceiling is limited to 32 [FTE's], and it would be imprudent to use an FTE for receptionist duties." Def.'s Mem. at 12 & Ex. 1 (1st Fields Decl.) ¶ 23a. Because the ADF was limited to employing only 32 full time

equivalent positions, the ADF utilized contract employees, in part, because it allowed greater flexibility in accommodating any budget shortfalls and allowed budgetary flexibility. *Id.*

Redd an employee of the [defendant.]" *Id.* at 939–40. Additionally, the *Redd* Court stated that the "client's command to remove a specific worker . . . would hardly render the worker an employee of the client." *Id.*

In this case, the defendant concedes that the ADF provided the plaintiff with office equipment and a place to work. Def.'s Mem. at 14. However, the defendant points out that this was solely because the plaintiff's primary task was to work as a receptionist and she could only fulfill the terms of her obligations at the offices of the ADF. *Id.* As was the case in *Redd*, this Court finds these factors de minimus in regards to the plaintiff's burden of showing control over her work by the defendant. As to the manner in which the work relationship was terminated, the plaintiff states in her complaint that she was discharged without any written or verbal reason for her termination. Compl. ¶ 8. The defendant submits that this acknowledgment actually supports his position because it demonstrates that, unlike civil servants, the employment relationship at issue here could be terminated by either party at will. *Zhengxing*, 215 F.Supp.2d at 118–19; Def.'s Mem. at 13 & Ex. 1 (1st Fields Decl.) ¶ 28. Moreover, the defendant points out that the plaintiff's contracts with them all had fixed dates and did not require the ADF to notify the plaintiff if it chose not to renew the contracts after they expired. *Id.* ¶ 19. On balance, this Court finds that the facts in this third *Redd* category of the *Spirides'* factors weighs against the existence of an employer-employee relationship.

### d. Whether the Relationship Shares Attributes Commonly Found In Arrangements With Independent Contractors or With Employees

The final category of the *Spirides'* factors "appears to ask whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees[.]" *Redd*, 232 F.3d at 940. These factors analyze the duration of the engagement, the method of payment, whether annual leave is afforded, whether the worker accumulates retirement benefits, and whether the client pays social security taxes for the worker. *Id.* The *Redd* Court stated that "[e]mployment relationships tend to be longer or at any rate more likely of indefinite length, to afford annual leave and retirement payments, and to assign payment of social security taxes to the employer." *Id.* Further, the Court noted that "[p]ayment by time period suggests employment; payment by product suggests an independent contractor relation." *Id.* The *Redd* Court determined that since in that case the plaintiff's employment agency paid her wages, allotted her vacation time, and paid her social security taxes, it was the employment agency that was her employer and not the Secretary of the defendant agency. *Id.*

In the present case, the plaintiff was initially hired in October 1998 to perform receptionist functions under a contract the ADF entered into with Career Blazers, a temporary services agency. Def.'s Mem. at 1 & Ex. 1 (1st Fields Decl.) ¶ 15. According to the plaintiff, she originally signed a one year contract with annual renewal options, but that the contract, after several modifications, eventually became renewable every two weeks. Compl. ¶ 5. The defendant notes in this regard that the plaintiff's contracts were not continuous, and also that there were several gaps in her employment. Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl. ¶ 19). Additionally, for March and April of 2003, the plaintiff worked pursuant to the "two week purchase orders with specific tasks and products to deliver." Def.'s Mem. at 13 & Ex. 1 (1st Fields Decl.) ¶ 17. Accordingly,

the "duration of the engagement" factor weighs against an employer-employee relationship, as the plaintiff's work obligations were term based, not continuous and ultimately performed in two-week periods, unlike the typical long term and indefinite employee arrangement. *Redd,* 232 F.3d at 940.

■■■ The defendant contends that "[u]nlike the ADF employees who are civil servants and paid bi-weekly from the United States Treasury, contractors like [the p]laintiff, are paid by the contracting agency." Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl.) ¶ 29. In this regard, the defendant notes that the "[p]laintiff was paid by 'Gov. Works' or 'Career Blazers' except during the times she worked under short purchase orders/contracts." [6] *Id.* The situation here is similar to circumstances in *Redd,* where the Court found that an employment agency's payment of the plaintiff's wages showed that it, rather than the government agency for whom she was contracted to work, was her employer. 232 F.3d at 940. The plaintiff contends that she was paid bi-weekly by the ADF through the United States Treasury like other civil servants. Pl.'s Op. at 2. However, nowhere in plaintiff's complaint or opposition does she offer any evidence supporting her contention that she was paid by the ADF or by the United States Government during the entire time she worked at the ADF. The defendant suggests that the plaintiff may not realize that

her checks, which were authorized by Gov. Works, were not the result of the ADF authorizing her payments by the United States Treasury. Def.'s Rep. at 5. In fact, the defendant claims that "the bulk of [the][p]laintiff's paychecks were processed through the employment agencies for which she worked" and that the only payments directly authorized by the ADF occurred during "the last two months of her contractual relationship with [the] ADF." *Id.* at 4 & Def.'s Mem., Ex. 1 (1st Fields Decl.) ¶ 19; Def.'s Rep., Ex. 1 (Second Declaration of Nathaniel Fields, dated May 6, 2004) ("2nd Fields Decl.") ¶ 3.[7] The fact that the plaintiff was periodically paid by purchase orders and was otherwise paid through her employment agencies weighs in favor of the plaintiff being an independent contractor.

Next, the plaintiff claims, and the defendant concedes, that she was afforded annual leave. Pl.'s Op. at 2 & Ex. 3,(Request For Leave or Approved Absence, dated September 17, 2001); Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl.) ¶ 31. The plaintiff also argues that she accrued sick leave. Pl.'s Op. at 2 & Ex. 1 (Mason Aff.) ¶ 11. However, the defendant claims that, as with all contract employees who are employed for more than one month, the plaintiff accrued annual leave but did not accrue sick leave as she would have received had she been a federal employee. Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl.) ¶ 31.

---

**6.** Gov.Works and Career Blazers are both temporary employment contracting agencies. Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl.) ¶ 29. The defendant represents that while the plaintiff worked for Career Blazers (October 1998 through August 1999), she received checks directly from the temporary agency. Def.'s Reply at 5.

**7.** The only time the ADF authorized direct payments from the United States Treasury to the plaintiff was during the last two months of her contractual relationship with the ADF.

Def.'s Rep. at 4 & Ex. 1 (2nd Fields Decl.) ¶ 3; Def.'s Mem. Ex. 1 (1st Fields Decl.) ¶ 29. During that two month period, the ADF procured the plaintiff's services through micropurchase orders. Def.'s Rep. at 4 & Def.'s Mem. Ex. 1 (1st Fields Decl.) ¶ 19. "Except for micro-purchases, [the] ADF out-source[d] the administration of its contracts." Def.'s Rep. at 4. And because the ADF administered micro-purchases in-house, those payments to the plaintiff were authorized directly from the United States Treasury. Def.'s Rep. at 4 & Ex. 1 (2nd Fields Decl.) ¶ 3;

Three important factors that weigh against an employment relationship in this case are the plaintiff's non-receipt of retirement benefits and health insurance, and the requirement that she pay her own social security taxes. *See Redd,* 232 F.3d at 940 (suggesting that employment relationships "tend ... to afford ... retirement payments ... and to assign payment of social security taxes to the employer"). It is undisputed that the ADF did not offer the plaintiff any retirement or health benefits. Def.'s Mem. at 15 & Ex. 1 (1st Fields Decl.) ¶¶ 31–32. It is also undisputed that the plaintiff was advised of her responsibility to pay her own social security taxes. *Id.* In fact, as noted earlier, the plaintiff attempted to acquire a permanent position with the ADF, and the defendant suggests that she did so in order to receive the same benefits as the ADF employees. Def.'s Mem. at 9, Ex. 1 (1st Fields Decl.) ¶ 20. Again, on balance, this Court concludes that the fourth category of factors weighs in favor of the plaintiff having had an independent contractor relationship with the defendant.

In sum, this Court finds that eight of the eleven *Spirides'* factors weigh against the existence of an employer-employee relationship between the ADF and the plaintiff, while only three of the factors weigh in favor of the plaintiff having been an employee. This finding confirms the Court's conclusion that the defendants did not control the means and manner of the plaintiff's work performance. Accordingly, the Court holds that the plaintiff was an independent contractor, and therefore this action must be dismissed because the Court is without subject-matter jurisdiction to entertain it.

### IV. *Conclusion*

For the reasons set forth above, the defendant's motion to dismiss is granted.

8. An Order consistent with this Memorandum

**SO ORDERED** on this 7th day of December, 2004.[8]

Opinion was issued on November 30, 2004.